IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| KIMBERLY K. DARBY, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 1:17-CV-00032-C |
| v. § | |
| § | |
| ANDREW M. SAUL,[1] § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's motion for attorneys' fees (Dkt. No. 29) under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Senior United States District Judge referred this motion to the undersigned Magistrate Judge on October 2, 2019 (Dkt. No. 38) for findings, conclusions, and a recommendation. Based on the filings, evidence, and applicable law, it is recommended that Plaintiff's request for attorneys' fees under the EAJA be **GRANTED IN PART**, and the Court award Plaintiff the sum of $15,223.28 in attorneys' fees.

## BACKGROUND

Plaintiff Kimberly K. Darby (Plaintiff) filed a complaint in federal court appealing the decision of the Commissioner of Social Security (Commissioner), which denied Plaintiff disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 301, *et seq*. (*See* Dkt. No. 2). The matter was referred to Magistrate Judge Scott Frost, who entered findings, conclusions,

---

[1] Andrew M. Saul took office as the Commissioner of the Social Security Administration on June 17, 2019. Commissioner Saul is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

and a recommendation that the Commissioner's decision be vacated and Plaintiff's action remanded for further proceedings. (Dkt. No. 27 at 7).

On March 1, 2019, the Senior United States District Judge vacated the decision of the Commissioner of Social Security and remanded this case for further administrative proceedings pursuant to 42 U.S.C. § 405(g). (Dkt. No. 28). No party sought an appeal, and the judgment became final. Upon finality of the judgment, Plaintiff timely filed her motion on May 30, 2019, seeking reimbursement for attorneys' fees under the EAJA for work performed during 2017, 2018, and 2019. (Dkt. No. 29). The Commissioner filed his response in opposition on June 5, 2019 (Dkt. No. 30). On July 4, 2019, Plaintiff filed a corrected reply defending her EAJA fee motion. (Dkt. No. 35).

## LEGAL STANDARD

The EAJA provides for the award of court costs and attorneys' fees to the "prevailing party" in a judicial review of agency action, unless the position of the United States was "substantially justified" or "special circumstances" would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The Commissioner does not dispute that Plaintiff was the prevailing party. Nor does the Commissioner argue that the position of the United States was substantially justified or that other circumstances would make an award of costs and fees to Plaintiff unjust. (Dkt. No. 30 at 1). Thus, the only two issues before the Court are: (1) whether the hourly rate claimed by Plaintiff for her attorneys' fees is reasonable, and (2) whether the number of hours claimed by Plaintiff for her attorneys' fees is reasonable. The Commissioner notes that any award of attorneys' fees under the EAJA must be made directly payable to Plaintiff, not Plaintiff's counsel, pursuant to the Supreme Court decision in *Astrue v. Ratliff*, 560 U.S. 586, 598 (2010).

In determining attorneys' fee awards, the EAJA serves a dual purpose: "to ensure adequate representation for those who need it and to minimize the cost of this representation to taxpayers." *See Baker v. Bowen*, 839 F.2d 1075, 1083 (5th Cir. 1988). An award of attorneys' fees under the EAJA must also be reasonable. 28 U.S.C. § 2412(b). The plaintiff bears the burden of proving the reasonableness of both the hourly rate and the number of hours. *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535-36 (5th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)) (the fee applicant bears the burden of documenting the appropriate hours expended and hourly rates); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) (the fee applicant holds the burden of proving that the number of hours requested is reasonable). In meeting this burden, a fee applicant may submit contemporaneous billing records for a determination of reasonable hours. *Johns v. Colvin*, No. 3:13-CV-4420-BH, 2016 WL 1366267, at *2 (N.D. Tex. Apr. 6, 2016) (citing *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)).

The reasonableness of attorneys' fees under the EAJA is determined by application of the 12-factor 'loadstar' test adopted by the Fifth Circuit in *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714 (5th Cir. 1974). The court is not required to analyze every factor "if it is apparent that the court has arrived at a just compensation based upon appropriate standards." *Sanders v. Barnhart*, No. 04-10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005); *see also Hensley*, 461 U.S. at 434, n. 9 ("[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate.") (internal citation omitted).

As for the reasonableness of the hourly rate, the EAJA provides that attorneys' fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost

3

of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

The Supreme Court recognized in *Pierce v. Underwood*, 487 U.S. 552, 571-74 (1988) that when a court finds that a cost of living increase justifies an adjustment to the statutory fee cap, courts must consider that provision separately from the special factor provision. The Fifth Circuit similarly held that an adjustment for inflation is appropriately applied to the rate of the statutory fee cap. *Hall v. Shalala*, 50 F.3d 367, 370 (5th Cir. 1995).

Though not absolutely *required*, upon the receipt of proper proof of an increase in the cost of living, a court *should* make an appropriate adjustment to the statutory fee cap in light of the EAJA's dual mandate. *Baker*, 839 F.2d at 1084 (emphasis added). Finally, because the EAJA is a partial waiver of sovereign immunity, it must be strictly construed in the government's favor. *Tex. Food Indus. Ass'n v. USDA*, 81 F.3d 578, 580 (5th Cir. 1996).

## DISCUSSION

Plaintiff asks this Court to adjust the current statutory fee cap for EAJA attorneys' fees in the Abilene Division from an hourly rate of $140.00 to a higher, inflation-adjusted hourly rate.

**A. Plaintiff's hourly rate calculation**

Plaintiff argues, in effect, that the prevailing legal market for judicial review of Social Security disability appeals has evolved from a local market to a more regional or inter-state market due to near universal use of electronic filing. (Dkt. No. 35 at 2-3). As a consequence of this evolution, Plaintiff argues, large disparities in hourly attorney fees under the EAJA within a single federal division are untenable. Plaintiff asks the Court to update the hourly rate in the Abilene Division by applying the data published by the U.S. Bureau of Labor Statistics for the Dallas-Fort Worth consumer price index (DFW CPI). As a result, Plaintiff seeks attorneys' fees totaling

$16,491.57, which includes a request for 4.4 hours in 2017 at an hourly rate of $191.35 per hour; 62.9 hours in 2018 at an hourly rate $195.98 per hour; 4.2 hours in 2019 at an hourly rate $200.15; and an additional 12.4 hours in 2019 at an hourly rate of $200.15 for work performed in defending the EAJA fee motion. (Dkt. No. 35 at 12). The Commissioner, in turn, argues that applying the DFW CPI to Abilene would result in an hourly rate that corresponds with the available rates in the Dallas-Fort Worth areas, but is "not reflective of the proper rate for Abilene", which this Court capped at an hourly rate of $140.00 in 2006. (Dkt. No. 30 at 2). The Commissioner contends that Abilene is sufficiently distinct from the DFW area to warrant a lower EAJA attorneys' fee rate (Dkt. No. 30 at 1).

The EAJA does not specify any particular method or any particular data to use for computing the increase in the cost of living. "Use of the local or regional index is arguably the 'fairer course' to take because it considers the cost of living actually experienced by the applicant and avoids the pitfalls of using the national CPI, such as: (1) depriving an attorney of the actual increase in the CPI where he works when that increase (if measured locally or at least regionally) is greater than the increase in the national CPI; [and] (2) creating a windfall [for the attorney] where the national CPI increase is greater than either the applicable local or regional CPI increase." *Hamblen v. Colvin*, 14 F. Supp. 3d 801, 809 (N.D. Tex. 2014) (internal citation and quotation marks omitted). The use of such local data promotes fee rates that are "uniform within a particular district court division." *Bates v. Colvin*, No. 3:13-CV-1659-L, 2014 WL 2547060, at *4 (N.D. Tex. June 5, 2014) (accepting recommendation of Mag. J.); *accord Hall*, 50 F.3d at 370 (requiring uniformity within the New Orleans district courts); *Baker*, 839 F.2d at 1083 (requiring uniformity in "fee awards in the Dallas district courts"); *Washington v. Barnhart*, 93 Fed.Appx. 630, 631 (5th

5

Cir. 2004) (instructing district courts in the Southern District of Texas to be "cognizant" of uniformity).

Indeed, the Court of Appeals for the Fifth Circuit made clear in *Baker v. Bowens* that district courts should grant an increase in attorneys' fee awards if there is a significant difference in the cost of living in a "particular locale" since the enactment of the EAJA. 839 F.2d at 1084. The court further stated that the rule does not necessarily "require that attorneys' fee awards track the cost-of-living index for the geographical region" because, while such an indicator is "certainly significant", the decision of whether and how much to increase an attorneys' fee rate based on the cost of living is within the discretion of the district courts. *Id*. When adjusting the attorneys' fee rate within a division, *Baker* requires uniform adjustments in order to "avoid a multiplicity of conflicting views" among the courts and litigants alike. *Id*. at 1803.

The Fifth Circuit later clarified the uniformity requirement in *Yoes v. Barnhart*, 467 F.3d 426, 427 (5th Cir. 2006) (per curiam) (holding that district courts in San Angelo and Abilene did not abuse their discretion when applying calculations of attorneys' fees that deviated from the Dallas division rate). The *Yoes* court held that *Baker* "did not mandate uniformity across the entire federal district" and that "[a]lthough rate fluctuations among federal courts serving the same city are arbitrary, the same rate disparities between courts serving two different markets is more than reasonable; indeed, it is expressly calculated by the Act itself." *Id*. As a result, *Yoes* permits different federal divisions within the Northern District of Texas to have different attorneys' fee rates under the EAJA, so long as the fees are uniform within a particular division.

Less than a month after the *Yoes* decision, this Court adjusted the statutory fee cap for attorneys' fees under the EAJA from $132.50 to $140.00 to appropriately account for an increase in the cost of living in the Abilene Division. *Lopez v. Astrue*, No. 1:05-CV-0137-C (N.D. Tex.

6

Nov. 1, 2006).  In deciding *Lopez* this Court exercised its discretion to limit the cap at $140.00, noting that "a further increase *at this time* is not necessary to ensure an adequate source of representation." *Id*. at 5, *aff'd,* 236 Fed.Appx. 106 (5th Cir. 2007) (per curiam).

      The attorneys' fee cap has remained capped at $140.00 since *Lopez* was decided in 2006.  The Court agrees with Plaintiff's argument that Abilene now experiences a higher cost of living than it did when this Court decided *Lopez*, and that the cost of living increase necessitates an adjustment to the EAJA statutory fee cap.  The Court will now consider to what extent the statutory fee cap should be adjusted to account for an increase in the cost of living and to ensure that the fee cap provides an adequate source of representation pursuant to *Baker*.

      "An award of attorney's fees rests within the sound discretion of the trial court." *Abrams*, 805 F.2d at 535.  This Court is required to determine the fee award in this case based on a rate that minimizes the cost to the taxpayers and that does not exceed the amount reasonably necessary to ensure an adequate source of representation in this court.

      In the thirteen years since *Lopez*, as the Commissioner correctly points out, this Court repeatedly held that an hourly rate of $140.00 serves to ensure an adequate source of representation in the Abilene Division.  The Commissioner points to several cases in support of his argument that $140.00 remains an appropriate hourly rate for the Abilene Division, but these cases are distinguishable from the instant case.  In *Garcia v. Colvin*, No. 1:12-CV-204-BL (N.D. Tex. June 10, 2014) and *Evans v. Colvin*, No. 1:14-CV-202-BL (N.D. Tex. Feb. 29, 2016), the plaintiffs simply accepted the hourly rate of $140.00, and did not request more in their respective motions for EAJA attorneys' fees.  In *Usery v. Berryhill*, No. 6:15-CV-00049-BL (N.D. Tex. Dec. 12, 2017), this Court declined to adjust the $140.00 statutory fee cap because the plaintiff failed to provide sufficient evidence that a cost-of-living increase justified a higher fee or that a further rate

7

increase was necessary to ensure an adequate source of representation. Unlike these plaintiffs, the plaintiff in the instant case makes a compelling argument that an increase in the cost of living warrants an adjustment to the statutory fee cap and requires a departure from the current hourly rate of $140.00.

The undersigned first notes that no CPI is calculated for the Abilene area, so other factors must inform the Court's decision in making cost of living adjustments to the statutory fee cap in Abilene. Notably, an examination of other divisions within the Northern District of Texas shows that the statutory fee cap for the Abilene Division falls well below other divisions by a significant margin. In the Lubbock Division, which—it is reasonable to assume—experiences a cost of living comparable to the Abilene Division, EAJA attorneys' fee awards are often $30 to $50 dollars higher than the fee awards in the Abilene Division. *See Chadis v. Saul*, No. 5:18-CV-00169-C (N.D. Tex. Oct. 9, 2019) (the Commissioner did not oppose an attorneys' fee award at an hourly rate of $195.55 for work performed in 2018 and 2019 in the Lubbock Division); *Bridges v. Saul*, No. 5:19-CV-00039-C (N.D. Tex. Aug. 16, 2019) (the Commissioner did not oppose an attorneys' fee award at an hourly rate of $195.55 for work performed in 2019 in the Lubbock Division).

Other divisions of similar size to the Abilene Division highlight a similar disparity. *See Trevino v. Berryhill*, No. 2:16-CV-00200-D-BR (N.D. Tex. Feb. 22, 2019) (the Commissioner did not oppose an attorneys' fee award at an hourly rate of $193.15 in the Amarillo Division); *Pruett v. Saul*, No. 7:18-CV-00110-O-BP (N.D. Tex. Oct. 24, 2019) (accepting recommendation of Mag. J.) (the Commissioner did not oppose an attorneys' fee award at an hourly rate of $195.90 for work performed in 2018 and $199.90 for worked performed in 2019 in the Wichita Falls Division).

While a disparity in fee rates between federal divisions is permissible according to *Yoes*, the current disparity suggests that the rate in Abilene does not comport with the *Baker* directive

that EAJA attorneys' fee awards ensure an adequate source of representation. In his reply, Plaintiff's counsel provides a declaration from an attorney that frequently litigates social security disability cases. (Dkt. No. 35-2). The attorney notes that the current $140.00 fee cap on hourly rates dissuades him from accepting social security disability cases in the Abilene Division because it is among the lowest EAJA rates he could receive. *Id*. This evidence speaks directly to the current need for an adjusted hourly rate that ensures adequate representation within the Abilene Division.

While the Commissioner argues that Abilene is sufficiently distinct from the DFW area to warrant a lower hourly rate, he does not suggest what that lower rate might be, other than to necessarily imply that while the cost of living has increased in the DFW area since 2006, it has not in Abilene. The Commissioner clearly does not bear the burden to prove what rate is reasonable in the Abilene Division; however, the argument that the cost of living in Abilene has not increased since 2006 falls flat.

The Court is persuaded that an adjustment to the statutory fee cap is warranted in Abilene, not only to reflect an increase in the cost of living since 2006, but also to ensure an adequate source of representation within the Abilene Division pursuant to *Baker*. However, while the Plaintiff has carried the burden to show that a cost of living adjustment justifies a higher attorneys' fee rate, and that such an increase is necessary to ensure an adequate source of representation in the Abilene Division, this Court declines to adopt the rates available in the Dallas-Fort Worth area as the appropriate rate for the Abilene Division.

Instead, to arrive at a properly adjusted rate for Abilene, the Court begins with the undisputed premise that $140 per hour was reasonable for the Abilene Division in 2006. Next, while the hourly rate itself should not be the same in Abilene as in the DFW area, it is reasonable

to assume (absent evidence to the contrary) that the rate of increase in the cost of living since 2006 has been similar. When compared to 2006, the CPI in the DFW area increased by 24.38% in 2017, 28.9% in 2018, and 33.67% in 2019. Applying these increases to the Abilene Division results in adjusted hourly rates of $174.13 in 2017, $180.46 in 2018, and $187.12 in 2019. By comparison, rates adjusted by the DFW CPI for the same years would be $191.35, $195.98, and $200.15, respectively. These rates reflect both the lower cost of living in Abilene compared to the DFW area and that Abilene is not altogether immune to increases in the cost of living in its nearest metropolitan area. Furthermore, the reasonableness of adjusting the Abilene rate in this manner is illustrated by the fact that these rates are more in line with the hourly EAJA rates awarded (and unopposed) for EAJA attorneys' fees in similar cases in comparably-sized areas of Texas.

Accordingly, the undersigned recommends that statutory fee cap for EAJA attorneys' fees in the Abilene Division be adjusted in the amounts and for the reasons stated above.

## B. Reasonableness of hours claimed

Plaintiff seeks 71.5 hours for work performed by her attorney in appealing the Commissioner's decision to the district court and in preparing the EAJA fee motion, as well as an additional 12.4 hours of work in drafting the reply to the Commissioner's objections. (Dkt. Nos. 29 at 7; 35 at 12). For the reasons that follow, the undersigned finds that Plaintiff's request is reasonable and well supported.

### 1. 71.5 hours claimed

In claiming 71.5 hours of work, Plaintiff's counsel provides detailed time logs that support the hours claimed as reasonable for the work performed by counsel, which included preparing two briefs that achieved a favorable result for his client, and the work performed in preparing an EAJA fee motion. With respect to the 22.3 hours Plaintiff's counsel spent reviewing the administrative

record, counsel's review included not only just that, but also researching and writing the sections of the initial brief. (Dkt. No. 35 at 9). Courts have held that time spent reviewing the record may be logged separately from time spent drafting the corresponding sections of the brief. *See*, *e.g.*, *Bentley v. Astrue*, No. 3:10–CV–00032–L BF, 2011 WL 2923970, at *2 (N.D. Tex. June 15, 2011), *recommendation adopted as modified on other grounds*, 2011 WL 2938223 (N.D. Tex. July 20, 2011) (finding that 12.66 hours "spent reviewing and making notes on the record" were reasonable); *McNeil v. Astrue*, No. CIV. A. H-07-3664, 2009 WL 1451707, at *3 (S.D. Tex. May 22, 2009) (approving of 11.35 hours that counsel spent reviewing the administrative record); *Miller v. Apfel*, No. 3:00–CV–0107–M, 2001 WL 1142763, at *4 (N.D. Tex. Sept. 26, 2001) (declining to reduce from 24.10 to 12.5 the hours that counsel spent reviewing the administrative record).

In his response, the Commissioner seeks to reduce the 71.5 total hours claimed by Plaintiff's counsel to 56.6 hours—a reduction by 14.9 hours. (Dkt. No. 30 at 5). The Commissioner objects to the 22.3 hours of attorney time Plaintiff claimed to review the administrative transcript and the 3.5 hours Plaintiff seeks to recover for preparing the EAJA fee motion. *Id*. The Commissioner suggests that Plaintiff's counsel needed only 10 hours to adequately review the administrative transcript because the underlying social security disability issue was non-complex, the legal issues were not "difficult", and the medical evidence was "for the most part straightforward and understandable." *Id*. at 4-5. The Commissioner also argues that Plaintiff's counsel only needed 1.5 hours to prepare the EAJA fee motion because the motion uses "largely boiler plate language." *Id*. at 4.

While the Commissioner acknowledges that Plaintiff's counsel prepared two briefs and secured a remand for the Plaintiff, he opines that 71.5 hours is "excessive and not adequately explained." *Id*. In support of this conclusion, the Commissioner cites only two specifics. First,

the Commissioner takes issue with Plaintiff's description of the 2,420-page transcript as "enormous" and with the Plaintiff's description of her medical issues as "complex". The Commissioner incorrectly asserts that Plaintiff seeks 22.3 hours "just to review the administrative record."[2]

Ultimately, the undersigned concludes that Plaintiff's counsel provided sufficient evidence to satisfy his burden of proof that the 71.5 hours claimed is reasonable. Plaintiff's counsel cites several facts that warrant this finding, such as: (1) the complexity of the physical and mental challenges faced by Plaintiff resulting from her disability, Crohn's disease; (2) the rarity of the Plaintiff's disability that involves additional research and review of complex medical records; and (3) the large, 2,465-page record of agency proceedings in this case.

Assuming that a typical fee applicant under the EAJA claims "between thirty and forty hours" for attorney work on non-complex cases with straightforward legal issues, *Hardy v. Callahan*, No. 9:96-CV-257, 1997 WL 470355, at *9 & n.10 (E.D. Tex. Aug. 11, 1997), a "determination of attorney's fees under the EAJA is based on reasonableness, not necessarily what is considered typical." *Johns*, 2016 WL 1366267, at *4. Courts may, and indeed do, award attorneys' fees for hours that deviate from the typical thirty to forty-hour range so long as such an award is reasonable. *Williams v. Berryhill*, No. 3:17-CV-3277-B-BN, 2019 WL 3006812, slip op. at *3 (N.D. Tex. Jul. 10, 2019) (approving 65.5 hours expended); *Sweat v. Barnhart*, No. 3:05-CV-0329-M, slip op. at 4 (N.D. Aug. 27, 2009) (approving 66.1 hours expended).

Based on the evidence and arguments presented, the undersigned finds that the Plaintiff has adequately supported the reasonableness of the number of hours claimed for her attorney and,

---

[2] As Plaintiff effectively points out, the Commissioner's description of the work performed during these 22.3 hours appears to be inaccurate or incomplete.

12

accordingly, recommends that the Commissioner's objection to the 71.5 hours claimed be overruled.

### 2. 12.4 hours claimed defending EAJA fee motion

Plaintiff also claims 12.4 hours expended in defending her original EAJA fee application against the Commissioner's objections. (Dkt. No. 35 at 11). When a party establishes eligibility for a fee award under the EAJA, the fee award covers the cost of "all phases of successful litigation" incurred by a party. *INS v. Jean*, 496 U.S. 154, 164-166 (1990); *accord Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (the goal of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable actions) (internal quotations omitted).

These costs include those incurred through defending a fee application. *See Sandoval v. Apfel*, 86 F. Supp. 2d 601, 616 (N.D. Tex. 2000) (citing *Powell v. Commissioner*, 891 F.2d 1167, 1170-71 (5th Cir. 1990)) (fees incurred in litigating a fee application are compensable under the EAJA). Plaintiff's request for 12.4 hours in defending against the Commissioner's objections is reasonable in consideration of the effort expended to bring the Abilene hourly rate in line with the changes in the cost of living.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is therefore **RECOMMENDED** that the Plaintiff's motion be **GRANTED IN PART**, and that Plaintiff be awarded $15,223.28 in attorneys' fees as follows:

(1) 4.4 hours of attorney work for litigating Plaintiff's appeal in 2017 at an hourly rate of $174.13;

(2) 62.9 hours of attorney work for litigating Plaintiff's appeal in 2018 at an hourly rate of $180.46;

(3) 4.2 hours of attorney work for litigating Plaintiff's appeal in 2019 at an hourly rate of $187.12; and,

(4) 12.4 hours for defending Plaintiff's EAJA attorneys' fee application in 2019 at an hourly rate of $187.12.

To the extent that an award of attorneys' fees in excess of this amount was sought, such motion is **DENIED IN PART.**

**IT IS ORDERED** that this case is **TRANSFERRED** to the docket of Senior United States District Judge Sam R. Cummings.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SO RECOMMENDED this 27th day of November, 2019**.

_____
**JOHN R. PARKER**
**UNITED STATES MAGISTRATE JUDGE**